Walter Lee O'NEAL, Jr., Movant/Appellant,

v.

**STATE of Missouri, Respondent.**

No. ED 88760.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 11, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 18, 2007.

Lisa M. Stroup, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Roger W. Johnson, Asst. Atty. Gen., Jefferson City, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

Movant Walter Lee O'Neal, Jr., appeals the motion court's denial without an evidentiary hearing of his post-conviction relief motion, which sought to vacate his *Alford*[1] pleas of guilty to two counts of second-degree felony murder. Because the facts recited at the plea hearing constitute a factual basis for Movant's pleas of guilty, we deny his first point. Because his claim otherwise relies on allegations outside the plea record, we reject his second point and affirm the motion court's judgment.

Movant robbed a motel in Farmington, Missouri. After being spotted by police, Movant fled in a van, and police officers followed in their cars, in high-speed pursuit. One pursuing officer's car collided with a bystander's car, killing its two occupants. The State charged Movant with two counts of second-degree felony murder, one count of first-degree robbery, one count of first-degree tampering, and one count of felony resisting arrest. The State

and Movant reached a plea agreement and Movant entered his *Alford* pleas of guilty to two counts of second-degree felony murder, Section 565.021 RSMo.2000,[2] on December 29, 2005.[3]

In his post-conviction challenges, Movant asserts that the presented facts do not constitute second-degree felony murder for two distinct reasons. First, he argues that the victims' deaths were not the "natural and proximate result" of the robbery. Second, he asserts that the deaths did not result from his immediate flight from police because his flight was over before the victims' car was hit by the officer's car.

Therefore, we set forth the following details, which the State related at the plea hearing as a factual basis for Movant's pleas. The State asserted that, had the case proceeded to trial, the State would have proved beyond a reasonable doubt that on May 12, 2004, the Farmington police department issued a dispatch regarding a robbery, which had just occurred at the Farmington Super 8 Motel. The dispatch included the robber's description. A number of Farmington police officers responded to the dispatch, either by arriving on the scene or by patrolling the environs, in search of the suspect. Officer Barton saw a van whose driver matched the broadcast description of the suspect. As Officer Barton attempted to get the van's license-plate number, the van's driver spotted the police car and took off. As later learned, that driver was

1. An *Alford* plea is a plea of guilty based upon principles enunciated in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In *Alford*, the United States Supreme Court recognized "a defendant could choose to plead guilty, although not actually admit guilt, when the record strongly supported a finding of guilt and the defendant believed a plea bargain was in his or her best interest." *Kramer v. State*, 165 S.W.3d 209, 210 n. 1 (Mo.App. E.D.2005); *see also, M.A.B.*

*v. Nicely*, 909 S.W.2d 669, 670 n. 1 (Mo. banc 1995).

2. All statutory references are to RSMo.2000.

3. In exchange for Movant's pleas of guilty to the two counts of second-degree felony murder, the State agreed to dismiss the other three counts and to recommend two concurrent sentences of thirty years' imprisonment.

Movant. Officer Barton followed with his car in pursuit and radioed to other officers that he was pursuing the suspected robber. A number of other officers from the Farmington Police Department joined the chase in their cars. Movant traveled at a very high rate of speed through the streets of Farmington. In particular, the State asserted that "while officers were in pursuit" of Movant, Officers Lacey and Ratliff, each in his own separate police car, were pursuing Movant's van coming up Maple Valley Drive. The State continued, declaring:

> A number of vehicles had pulled off to the side of the road to yield to the oncoming police vehicles, including a vehicle that was driven by the victim, Monica Heit. That vehicle was also occupied by Janis Moutray.

> They had pulled off to the side of the road, and although Officer Lacey was able to pass with his lights and sirens activated, Corporal Byron Ratliff was behind, and apparently the vehicle drive[n] by Ms. Heit did not see that there was another police vehicle coming.

> The police vehicle driven by Corporal Ratliff had his lights and sirens activated. And unfortunately Ms. Heit pulled out into the road in an attempt to actually cross over the road as if to go into the Pang Apartment complex.

> Corporal Ratliff collided with the vehicle that was occupied by Ms. Heit and Ms. Moutray.

The State asserted that Ms. Heit and Ms. Moutray died because of their injuries sustained in the accident. The State declared that Movant, after traveling at a high rate of speed through several streets, lost control of his van and crashed into the side of a building. The police took Movant into custody and searched his person and the van. The Movant was wearing clothing consistent with the broadcast description of the robbery suspect. And the police found various items consistent with those items reported stolen from the motel. The police checked the van's license number and discovered that it had been stolen from St. Louis. The police took Movant to the police department and advised him of his *Miranda*[4] rights. He then confessed to robbing the motel.

After hearing the State's recitation, Movant conceded that the State had correctly summarized the evidence he would have to confront if he went to trial. Movant also acknowledged that he understood what was meant by an *Alford* plea. He confirmed that he and his attorney had reviewed and discussed the evidence "quite a few times" over an eighteen-month period. Movant further acknowledged that his decision to enter Alford pleas of guilty resulted from their review of the evidence and these discussions. Movant further stated that he understood his right to a jury trial and his other attendant rights described by the trial court, all of which he understood were waived by pleading guilty. The plea court found that Movant's pleas were made voluntarily and intelligently, with a full understanding of the charges and the consequences of the *Alford* pleas. Further, the plea court found that a factual basis existed to support the *Alford* pleas of guilty. Finally, the court accepted Movant's *Alford* pleas and sentenced Movant to two concurrent terms of thirty years' imprisonment in the Missouri Department of Corrections.

Movant filed a *pro se* motion for post-conviction relief. Appointed counsel then filed an amended motion. Movant alleged his guilty pleas were entered unknowingly, involuntarily, and unintelligently because he was denied effective assistance of coun-

4. *Miranda v. Arizona*, 384 U.S. 436, 469–473, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

sel and due process of law. He claimed that the recited facts, which he conceded existed at his guilty-plea hearing, did not constitute second-degree felony murder and his plea counsel did not so advise him. Specifically, Movant alleged that the recited facts did not constitute second-degree felony murder because: (1) the bystanders' deaths were not the "natural and proximate result" of the robbery charged as the underlying felony; and (2) the bystanders' deaths did not result from his immediate flight from police because his flight was over before the officer's car hit the victims' car. Movant asked that his pleas of guilty be vacated. The motion court's judgment denied Movant's request for an evidentiary hearing and his motion for post-conviction relief. Movant now appeals, advancing the same two claims argued to the motion court. However, we deny his first claim because the facts recited at the plea hearing demonstrate that the victims' deaths were the natural and proximate result of the robbery. And we reject his second claim because, having found the motion court's findings sufficient for our review, his claim relies on allegations outside the plea record. Therefore, we affirm the motion court's judgment denying relief.

## Discussion

■ In his first point, Movant alleges the motion court clearly erred in denying an evidentiary hearing and post-conviction relief because a factual basis did not exist for his pleas because the charged deaths were not the "natural and proximate result" of the robbery charged as the underlying felony. Movant argues that the victim driver's action of pulling her car into the pursuing officer's lane of traffic constituted an independent, intervening cause sufficient to relieve him of the responsibility for the victims' deaths. The motion court denied Movant's claim, reasoning that Movant, in fleeing an armed robbery at a high rate of speed, could reasonably have anticipated that the police would give chase at a high rate of speed and that innocent bystanders may be injured or killed by a collision with his vehicle or with a police car chasing him. The motion court concluded that the victim's actions were part of the chain of events set in motion by Movant and not a "new and independent force," whether or not the victim was at fault for her actions while driving in the wake of Movant's chase.

This Court's review of a motion court's denial of a Rule 24.035 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Dorsey v. State*, 115 S.W.3d 842, 845 (Mo. banc 2003); *Flores v. State*, 186 S.W.3d 398, 399 (Mo. App. E.D.2006). A motion court's findings and conclusions are clearly erroneous only if, after a full review of the record, this Court is left with a definite and firm impression that a mistake has been made. *State v. Roll*, 942 S.W.2d 370, 375 (Mo. banc 1997); *Flores*, 186 S.W.3d 398. In reviewing a motion for post-conviction relief filed pursuant to Rule 24.035, an *Alford* plea is not treated differently from a guilty plea. *Nguyen v. State*, 184 S.W.3d 149, 152 (Mo.App. W.D.2006).

■ A plea court may not enter judgment on a guilty plea unless it determines there is a factual basis for the plea. Rule 24.02(e). A factual basis for a guilty plea is necessary to ensure that the guilty plea was intelligently and voluntarily entered, thereby satisfying due-process requirements. *State v. Henry*, 88 S.W.3d 451, 457 (Mo.App. W.D.2002). The required factual basis can be established by the defendant's testimony, or his acknowledgment of facts recited by the prosecutor. *Ennis v. State*,

887 S.W.2d 771, 773 (Mo.App. S.D.1994). So long as a defendant understands the nature of the charges against him, trial courts are not required to explain every element of the crime. *State v. Taylor,* 929 S.W.2d 209, 217 (Mo. banc 1996). A factual basis exists if the defendant understands the facts presented at the guilty-plea proceeding and those facts establish the commission of the charged crime. *Martin v. State,* 187 S.W.3d 335, 339 (Mo. App. E.D.2006); *Nguyen,* 184 S.W.3d at 152. " 'A defendant is not required to admit or to recite the facts constituting the offense in a guilty plea proceeding, so long as a factual basis for the plea exists.' " *Nguyen,* 184 S.W.3d at 152 *quoting Daniels v. State,* 70 S.W.3d 457, 461 (Mo.App. W.D.2002) *citing State v. Morton,* 971 S.W.2d 335, 340 (Mo.App. E.D.1998). When a movant who has entered an *Alford* plea asserts that there is an inadequate factual basis for the plea, the court necessarily takes into account the fact that with an *Alford* plea there is an explicit refusal to acknowledge guilt. *Nguyen,* 184 S.W.3d at 152. The defendant, however, may still voluntarily, understandingly, and unequivocally make the choice to enter the plea. *Id.* The record should show the various factual elements necessary to constitute the offense and should show that the movant understood the elements. *Id.* at 153. As with any guilty plea, an *Alford* plea is valid if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Patrick v. State,* 160 S.W.3d 452, 455 (Mo.App. S.D.2005); *Nguyen,* 184 S.W.3d at 153

■■ Movant argues that a factual basis did not exist for his pleas because the charged deaths were not the "natural and proximate result" of the robbery charged as the underlying felony. A person is guilty of second-degree murder if he com-mits any felony and, in the perpetration of that felony, another person is killed as a result of the perpetration of that felony. *State v. Burrell,* 160 S.W.3d 798, 803 (Mo. banc 2005); Section 565.021.1(2). Missouri follows the foreseeability-proximate cause theory of felony murder in interpreting whether a death resulted from the perpetration of a felony. *State v. Moore,* 580 S.W.2d 747, 752 (Mo. banc 1979); *see also, State v. Baker,* 607 S.W.2d 153, 156 (Mo. banc 1980); *State v. Blunt,* 863 S.W.2d 370, 371 (Mo.App. E.D.1993). Under that theory, the identity of the actual killer is irrelevant and a defendant may be considered responsible for any deaths that are the natural and proximate result of the commission of a felony. *Baker,* 607 S.W.2d at 156; *Burrell,* 160 S.W.3d at 803; *Blunt,* 863 S.W.2d at 371.

For example, in *State v. Moore,* the defendant was held criminally liable even though he had not fired the fatal gunshot, which killed a bystander during an attempted robbery. In that case, the defendant and his accomplices entered a tavern, intending to rob the bartender. The defendant, holding a shotgun, announced the holdup, and a patron pulled a pistol from his waistband. One of the defendant's accomplices fired at the patron, and the patron returned fire. In the ensuing gunfight, one of the patron's bullets struck a bystander, killing him. The Supreme Court held that the felony-murder rule applied, even though the fatal shot had not been fired by the defendant or an accomplice, but instead by the patron. The Court concluded that it was reasonably foreseeable that the robbery attempt would meet resistance, and that the robbery set into motion the chain of events that caused the victim's death. *Moore,* 580 S.W.2d at 752–3. The Court noted that an independent intervening cause might relieve a defendant of criminal responsibility for the killing. *Id.* at 752. The Court,

however, found that the patron's act was not an independent act because it was the attempted robbery by the defendant and his accomplices that provoked the patron to draw his weapon, and it was the shot fired from one of the accomplices that provoked the patron's return fire. *Id.* at 752–3.

Similarly, the Supreme Court rejected arguments that an independent intervening cause existed in an attempted robbery, during which the intended robbery victim shot and killed the defendant's accomplice. *State v. Baker*, 607 S.W.2d 153 (Mo. banc 1980). There, the defendant fired a shotgun at the intended robbery victim, who returned fire. The defendant's accomplice then fired at the intended robbery victim. Thereafter, the noise of someone moving behind him startled the intended victim. He turned and fired, killing another of the defendant's accomplices. The defendant argued that he could not be convicted of first-degree felony murder because the intended victim's act of firing the fatal shot was an intervening cause of death, and because he had fled and abandoned the attempted robbery at the time of the fatal shooting. The Supreme Court rejected this argument, noting that it was the defendant "who initiated the gunfire and who set into motion the chain of events which caused [the accomplice's] death." *Id* at 157. The Court found that the shooting by the intended victim was not an independent intervening cause because it was the shots fired by the felons that provoked the intended victim's reaction of shooting after being startled. *Id.* The Court further noted that once defendant set into motion the chain of events leading to the accomplice's death, "he could not absolve himself from the consequences of his actions by simply running away from the scene of his crime." *Id.*

Defendants have unsuccessfully argued that an alleged intervening cause should relieve them of criminal liability in a variety of other cases. In *Black*, the defendant contended that alleged improper medical care constituted an intervening cause. *State v. Black*, 50 S.W.3d 778, 785 (Mo. banc 2001). In that case, the defendant, charged with first-degree murder for stabbing the victim, sought to admit testimony that the victim died as a result of improper medical care, rather than the defendant's attack. The court rejected this argument, reasoning that "any negligence of the victim's doctors is irrelevant if death is the proximate result of defendant's conduct." *Id.* The court further noted that "the unlawful act need not be the immediate cause of death. It is enough that it be a contributing proximate cause, although other contributing causes may have intervened." *Id.*

In *Kliegel*, the defendant asserted that the victim created the risk of his own death by driving in an intoxicated state and speeding prior to the accident. *State v. Kliegel*, 674 S.W.2d 64, 66 (Mo.App. W.D.1984). The court rejected this rationale, holding that contributory negligence was not a viable defense to a vehicular manslaughter charge. In so holding, the court noted, "nor does a wrongdoer escape liability for a criminal act because another event concurs to produce the prohibited consequence." *Id.*

In *Reichert*, the defendant maintained that the victim's alleged intoxication and negligence constituted a sufficient intervening cause. *State v. Reichert*, 854 S.W.2d 584, 598–9 (Mo.App. S.D.1993). The defendant in that case was charged with involuntary manslaughter and second-degree assault, stemming from his collision with a car stalled on the roadway. The defendant sought to introduce evidence of the accident victim's alleged intoxication

and the possibility of the victim avoiding the accident. The defendant posited these circumstances as the sole cause or efficient intervening cause of the death and injury to the victims. The court noted that "[i]t is possible for the negligence of a third party to rise to the level of a sole, intervening cause so as to eliminate legal causation on the part of defendant." *Id.* at 598. The court, however, rejected the defendant's argument, holding that "even if the deceased had been intoxicated and had been negligent in failing to remove his foot from the brake, thereby preventing the car from rolling off the roadway, those would not, as a matter of law, have risen to the level of a new and independent force which would have become the sole cause of the accident, thereby exonerating defendant." *Id.* at 598–9.

In *Moore*, the defendant argued that several intervening causes existed to relieve him of criminal liability for involuntary manslaughter and second-degree assault in connection with a chain-reaction automobile collision. *State v. Moore*, 128 S.W.3d 115, 120–1 (Mo.App. E.D.2003). The defendant cited another driver's negligence in driving while intoxicated and the fault of the other drivers in striking that driver's car, all of which occurred prior to the defendant's collision. The defendant argued that these causes, coupled with the victim's decision to "expose themselves to serious threat of injury' by standing near the wreckage, were sufficient intervening forces to relieve him of criminal liability. This Court rejected the defendant's contentions, finding that that victims" actions "do not rise to the level of a new and independent force which would become the sole cause of the accident." *Id.* at 121. We noted that the defendant was intoxicated, speeding, and driving erratically at the time of the accident, and that prior to defendant arriving at the scene, there was no evidence of anyone suffering any injuries because of the initial car accident. All of the injuries and loss of life occurred due to the defendant's actions. None of the victims' actions could be said to be the "sole cause" of the accident. *Id.*

In our case, after robbing a motel and being spotted by police, Movant drove off in his van, traveling at a very high rate of speed through the city streets where there were a number of cars. Under these circumstances, Movant could reasonably have foreseen that police would follow in pursuit and that an accident might ensue in which someone could be injured or killed. Therefore we hold that he victim's action of pulling her car back into the roadway, into the path of the pursuing officer, does not rise to the level of a new and entirely independent force, which would have become the sole cause of the accident and exonerated Movant. The victim would not have pulled her car over on the side of road had there been no high-speed chase. The officer's car, which collided with the victims' car, would not have been engaged in a high-speed pursuit if Movant had not driven off at a high rate of speed when spotted by the police after robbing the motel. We find no clear error in the motion court's conclusion that the victim's actions were part of the chain of events set in motion by Movant and not an independent, intervening cause, relieving Movant of responsibility for the victims' deaths.

In this case, the State charged Movant with second-degree felony murder for the victims' deaths, which occurred as a result of Movant's immediate flight from the commission of first-degree robbery. Movant acknowledged the import of the State's summarized evidence, inducing him to enter his *Alford* pleas of guilty. And, the recited facts constitute second-degree felony murder because the victim's actions were not an independent, intervening cause relieving Movant from responsibility

for the deaths but, rather, were the "natural and proximate result" of the underlying charged felony. Thus, Movant's claim that his pleas were involuntary, unknowing and unintelligent because the recited facts did not constitute second-degree felony murder fails. Likewise, Movant's assertion that counsel was ineffective for failing to advise him that the narrated facts did not constitute second-degree felony murder necessarily also fails. And consequently, the motion court was not required to hold an evidentiary hearing because the motion and the files and records of the case conclusively show that Movant is entitled to no relief on this claim. Rule 24.035(h). We find no clear error in the motion court's denial of Movant's request for an evidentiary hearing and his motion for post-conviction relief, and we deny Movant's first point.

■ In his second point, Movant alleges that the motion court erred in failing to rule on his second claim for relief and denying his post-conviction motion. Movant alleged in his second claim for relief that a factual basis for his guilty pleas did not exist because the charged deaths did not result from his immediate flight from police because his flight was over before the officer's car hit the victims' car. In denying Movant's motion, the motion court recounted the recited facts, along with a portion of the colloquy between the court and Movant. The motion court then made a generalized finding that the recited facts established a factual basis for Movant's *Alford* pleas of guilty. Movant complains that the motion court's findings and conclusions are insufficient because the court did not specifically rule on whether his "immediate" flight from police resulted in the victims' deaths.

A motion court is required to issue findings of fact and conclusions of law on all issues presented, whether or not a hearing is held. Rule 24.035(j). The court, however, is not required to individually address every claim brought by the movant. *Franklin v. State*, 24 S.W.3d 686, 692 (Mo. banc 2000). Generalized findings are sufficient so long as they provide the appellate court an adequate record for review of a movant's claims. *Id.* Such is the case here; we find that the motion court's findings and conclusions are adequate for our review.

Moreover, we find no clear error in the denial of his claim for relief. Movant argues that he was not committing a felony and was no longer fleeing the police at the time the officer's car hit the victims' car. In support of his contention, Movant alleges that the officer's collided with the victims' car at 4:36 p.m. He further avers that by this time, another officer had already witnessed Movant crash into a building and, within seconds of his crash, be apprehended at gunpoint by the police. Movant argues that at this point, his flight was over. Thus, he posits that because the victims' death occurred after his flight from police was concluded, the State could not provide a factual basis for the second-degree murder charges.

■ In essence, Movant's claim for post-conviction relief is not an attack on the factual basis recited at the plea hearing but, rather, a claim that some additional unrecited evidence might show that the collision between the officer's car and the victims' car occurred after his flight was over. We find nothing in the plea record that discloses at what time the officer's car collided with the victims' car, at what time Movant crashed his van, or the sequence of these occurrences. Movant is asking this Court to look outside the plea record and consider additional evidence to rebut the State's recited factual basis for the pleas of guilty. This we cannot do. The factual basis for a plea of guilty must be gleaned from the record of the guilty-plea hearing.

*Jones v. State,* 117 S.W.3d 209, 213 (Mo. App. S.D.2003). This Court may not consider matters outside of the record. *Id.* Evaluation of the existence of a factual basis for a plea depends on the recited facts and whether the record shows the various factual elements necessary to constitute the offense. *See Id.; see also Franklin v. State,* 989 S.W.2d 678, 680 (Mo.App. E.D.1999). The State here charged Movant with second-degree felony murder for the victims' deaths, which occurred as a result of Movant's immediate flight from the commission of first-degree robbery. And at the plea hearing, the prosecutor recited that "while officers were in pursuit" of Movant, the victims pulled back into the roadway, into the path of a pursuing officer. Because we find no evidence in the plea record that Movant's flight was over before the officer's car hit the victim's car, we deny Movant's second point.[5]

Again, Movant acknowledged the State's evidence as summarized at the plea hearing, which induced him to enter his *Alford* plea of guilty. The record confirms that he understood the recited facts and the nature of the charges against him. The recited facts establish the factual elements of the charged crimes. We affirm the motion court's judgment.

GLENN A. NORTON, P.J., and KENNETH M. ROMINES, J., concur.

---

5. Even if Movant's allegation found support in the plea record, Movant would be entitled to no relief. As noted above, in interpreting whether a death resulted from the perpetration of a felony, Missouri follows the foreseeability-proximate cause theory of felony murder. *Moore,* 580 S.W.2d at 752; *see also, Baker,* 607 S.W.2d at 156; *Blunt,* 863 S.W.2d at 371. Under that theory a defendant may

be considered responsible for any deaths that are the natural and proximate result of the underlying felony. *Baker,* 607 S.W.2d at 156; *Burrell,* 160 S.W.3d at 803; *Blunt,* 863 S.W.2d at 371. Having initiated the chain of causation, a defendant may be liable for a murder despite his claim that his flight was over and he had abandoned his criminal purpose. *See Baker,* 607 S.W.2d at 156-7.